(14 Misc. Rep. 469.)

### CORRELL et al. v. LAUTERBACH.

(Supreme Court, Special Term, New York County.   November, 1895.)

1. TESTAMENTARY POWERS—EXECUTION.

Testator directed that his property be divided into two equal parts, one to be held by P., as trustee of testator's children by his first wife, and the other by S. and others, in trust for his children by his second wife.   The division was to be made "by my executors with the concurrence of the trustees, * * * to be signified in writing under their hands and seals": and so much of the property as the executors and trustees deemed advisable was to be converted into money.   The will provided that "any powers or estate herein given to any trustees are given to the acting trustees in each case, and to the survivors and survivor of them, and to those who may succeed to the trust."   *Held*, that a deed by the sole executrix, followed by another by her, in which P. joined, did not convey to the grantee the title to the land, though S. and the others named as trus-

tees with him were dead when the deeds were made, and no trustee had been appointed in their stead.

2. SAME—DEFECTIVE EXECUTION—REMEDY.

Though the defective execution of a power of sale contained in a will may be remedied in equity, the remedy cannot be enforced in an action by the vendee under the attempted execution of the power to enforce the specific performance of a contract made with him for the purchase of the land.

Action by Frederick Correll and others against William Lauterbach to enforce the specific performance of a contract for the purchase of land. Plaintiffs claimed title through a deed executed by Maria L. Price, executrix of the will of Francis Price, deceased, and a confirmatory deed executed two years later, with the consent of Rodman M. Price annexed thereto. The deed was executed under a provision of the will that testator's estate "be divided into two equal parts by my executors, with the concurrence of the trustees, to be signified in writing, under their hands and seals; and that so much thereof as said executors and trustees shall deem advisable be converted into money"; and that "any powers or estate herein given to my trustees are given to the acting trustees, and to the survivor or survivors of them, and to those who may succeed to the trust." The trustees referred to in such provision were Rodman M. Price, as trustee for the children of testator by his first wife, and John H. Suckley, Rutsen Suckley, and George Suckley, as trustees of testator's children by his second wife. Defendant claimed that the attempted execution of the power of sale by Maria L. Price was ineffectual. Judgment for defendant.

David B. Ogden, Abram I. Elkus, and E. P. Schell, for plaintiffs.

George Hoadly, Abraham L. Jacobs, and Samuel F. Jacobs, for defendant.

PATTERSON, J. The plaintiffs, vendors, pray that specific performance of a contract for the sale of land may be decreed against the defendant, the vendee. The evidence shows that, on the day appointed for the completion of the purchase, the plaintiffs were unable to convey, in accordance with the requirements of the contract, all the property the subject of the agreement; that is to say, their deed would not pass to the purchaser the clear legal title to an important part of the premises, viz. a strip some 10 feet or more in width, constituting the whole avenue frontage of such premises. This inability resulted from the insufficient execution of an express power of sale contained in the will of Francis Price, who, in the year 1864, died seised of the land in question. The vendors' paper title is derived through two deeds claimed by them to be sufficient in execution of the power,—one executed by Maria L. Price, executrix, etc.; and the other, called a "confirmatory deed," by Maria L. Price, executrix, etc., and by Rodman M. Price, who was trustee of a particular trust created by the will referred to. The rights of the parties must be determined by considerations attaching to the express power of sale. I have sought in vain to uphold the conveyances as adequate to pass the whole title, on the theory that an implied power of sale

might be spelled out; but the proof is unsatisfactory and inconclusive as to the condition of the testator's estate, and as to the necessity of a sale of realty to pay either debts or legacies, or as to anything else to support an implied power, and the donation of the express power is so precise in its terms and definite in its scope that I am forced to the conclusion that no sale of the testator's realty was authorized otherwise than pursuant to and in conformity with the actual power granted for the specific purposes ordained by the testator in his will. In the absence of an implied power of sale, it is obvious that the deed from Maria L. Price, executrix, was ineffective as a grant. The power was given by the testator to be exercised under conditions. It was one of that class recognized by the statute of powers, to be executed by the act and deed of the donee, but only with the consent of third parties, which consent must be testified in the particular manner pointed out by the statute. Neither the formal statutory evidence nor any other proof of a consent of the third parties appears in connection with the deed referred to. Nor does the subsequent so-called "confirmatory deed" remove the objection; for something more than an adoption of the sale by means of a conveyance, in which Rodman Price, trustee, joined, was necessary to that end. The power of sale, to be effectually exercised, required the consents of two sets of trustees. I do not agree with the view that the power was granted to the executrix and trustees conjointly, and that, therefore, a deed under it must be executed by all of them as grantors; but it is plain, I think, that the testator intended that both sets of trustees, the survivors or successors, should consent to sales and conveyances to be made in furtherance of the testamentary scheme of establishing separate and independent trusts for the benefit of the children of each of his two marriages. As the trustees of each trust would be equally interested in and responsible for the due and proper constitution of the trust estates, and as this power was evidently given to aid in carving out and establishing from the testator's general estate the separate trust estates, it is plain that the trustees of each independent trust were to be consulted, and were to approve of any sales the proceeds of which were to become part of the capital of the trusts. The confirmatory deed, considered as a consent, is merely that of the trustee of one of the trusts. The other trust was not represented in that transaction. No consent was given for it, and none is to be inferred. The situation is not relieved by the provisions of the will that all powers, etc., are granted to the acting trustees and the survivor of them and their successors, and the suggestion that Rodman Price was the only acting and surviving trustee at the date of the confirmatory deed. He was not the trustee of the trust for the benefit of the children of the testator's second marriage. The two trusts are with great care kept separate and independent through the whole will. The consents necessary to a valid sale and conveyance were to be given by the trustees qua trustees, and not as mere individuals. It was an official consent, so to speak, that was required; and hence, if there were any one standing in the relation of successor to the trustees of the trust for the benefit of the children of the second marriage, the consent of that

successor was requisite.   At the time the confirmatory deed was made, that trust was not without a representative.   It had devolved upon the supreme court.   It was altogether within the power of the court to give or to withhold consent, either upon application directly made or through a person appointed to carry out the trust.   But neither the court nor the present substitute of the original trustees (there was one appointed by this court shortly after the deeds referred to were made) has ever consented to or confirmed the sale or the conveyances, and hence it follows that, on the day performance was due under the contract in this cause, the vendors could not convey that marketable title to which the vendee was entitled, not by the contract only, but as a legal right.   The case is therefore considered as presenting the feature of the defective execution of a power of sale, and, as such, doubtless, the defect may be remedied on its being shown to the court that the sale was made bona fide, and for a full consideration.   The plaintiffs, as purchasers for a valuable consideration, under a defectively executed power, may have the right to the protection of the statute which allows them the same relief in equity that would be accorded to such a purchaser claiming under a defective deed from an owner.   But that remedy cannot be made available in this action for specific performance against this defendant.   It is a familiar rule that in suits of this character, if no equities intervene to prevent, and a valid title can be made before decree, the court has a judicial discretion to compel a purchaser to take; but it is also a rule that the vendee shall not be required to await the result of an action brought or proceeding taken by his vendor against third parties or strangers to the contract to perfect the title.   Toole v. Toole, 112 N. Y. 333, 19 N. E. 682.   Such further proceedings are necessary to perfect this title.   The statute says it may be perfected in the same way as a title claimed under the defective execution of a deed, viz. by a suit in equity, which, in the case of a deed, would be against the grantor or his heirs.   In this case the beneficiaries of the trust and the substitute of the trustees of the trust for the children of the second marriage are entitled to be heard, and to have all questions bearing upon the original transaction and the consideration given for the land investigated.   It is not equitable that a purchaser who was entitled to his deed at the time named in his contract should be compelled to wait for years for the institution and determination of such an inquiry, and especially so under the changed circumstances of the defendant, sworn to by him on the trial of the cause.   There must be judgment dismissing the complaint on the merits, and in favor of the defendant, for the recovery of the amount of the counterclaim, but, in view of the good faith of the plaintiffs, with taxable costs only.   Ordered accordingly.